IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 5:11-CR-00217-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DOMONIC DEVARRISE USHER, | ) | |
| | ) | |
| Defendant. | ) | |

On March 30, 2021, Domonic Devarrise Usher ("Usher" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 469] and filed a memorandum in support [D.E. 469-1]. On April 21, 2021, Usher, through counsel, filed a second memorandum in support and exhibits [D.E. 474, 475, 480]. On June 5, 2021, the United States responded in opposition [D.E. 483]. On June 18, 2021, Usher replied [D.E. 484]. As explained below, the court denies Usher's motion.

I.

In 2009 and 2010, Usher and his crew committed a series of horrific armed robberies in Eastern North Carolina. See Presentence Investigation Report ("PSR") [D.E. 331] ¶¶ 4–40. On July 19, 2012, a jury convicted Usher of one count of conspiracy to commit violations of the Hobbs Act (interference with commerce by robbery), seven counts of interference with commerce by robbery, and seven counts of carrying and using a firearm during and in relation to a crime of violence. See United States v. Usher, 555 F. App'x 227, 228 (4th Cir. 2014) (per curiam) (unpublished); [D.E. 271]; PSR at 1. On December 5, 2012, the court held a sentencing hearing and adopted the facts set

forth in the PSR. See PSR; Sentencing Tr. [D.E. 349] 5; Fed. R. Crim. P. 32(i)(A)–(B). The court calculated Usher's total offense level to be 33, his criminal history category to be IV, and his advisory guideline range to be 188 to 235 months' imprisonment, to be followed by a minimum 84-month consecutive sentence for the first firearm count and a minimum 300-month consecutive sentence for each subsequent firearm count. See Sentencing Tr. at 6; PSR ¶¶ 140–45. At sentencing, Usher falsely proclaimed his innocence. See Sentencing Tr. at 8. After thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Usher to 235 months' imprisonment for counts one, two, four, six, eight, ten, and fourteen to run concurrently; to 84 months' consecutive imprisonment for count three; and to 300 months' consecutive imprisonment each for counts five, seven, nine, eleven, thirteen, and fifteen, for a total of 2,119 months' imprisonment. See [D.E. 337] 1–3; Sentencing Tr. at 11–18.

While imposing the sentence, the court noted how Usher and the robbery crew (all who testified against Usher) terrorized the store clerks and customers. See Sentencing Tr. at 12–13; see also Trial Tr. [D.E. 345] 47–48, 57–59, 163–65, 198–99; PSR ¶ 3. The court also noted Usher's serious criminal history, repeated instances of judicial leniency for Usher, and the need to protect society from Usher. See Sentencing Tr. at 13–14. As an alternative variant sentence, the court noted that even if the stacking provisions in section 924(c) did not effectively mandate a life sentence, then the court would impose a life sentence based on the section 3553(a) factors. See id. at 16–17. The United States Court of Appeals for the Fourth Circuit affirmed Usher's conviction and sentence on all counts. See Usher, 555 F. App'x at 229.

In 2015, Usher moved pro se for relief under 28 U.S.C. § 2255 and alleged ineffective assistance of appellate counsel for failing to challenge his 84-month sentence on count three in light of Alleyne v. United States, 570 U.S. 99 (2013), and for failing to challenge his "second and

2

subsequent" section 924(c) convictions under Alleyne. See [D.E. 358]; [D.E. 363] 4–12. On June 7, 2016, Usher, through counsel, supplemented his section 2255 motion to challenge his section 924(c) convictions in counts three, five, seven, nine, eleven, thirteen, and fifteen under Johnson v. United States, 135 S. Ct. 2551 (2015), arguing that Hobbs Act robbery is not a crime of violence. See [D.E. 375]. After holding the motion in abeyance awaiting the resolution of two Fourth Circuit cases, the court dismissed Usher's section 2255 motion and denied a certificate of appealability. See [D.E. 400]. Usher appealed the court's dismissal, and the Fourth Circuit denied a certificate of appealability. See United States v. Usher, 808 F. App'x 202 (4th Cir. 2020) (per curiam) (unpublished), cert. denied, 141 S. Ct. 1399 (2021).

On March 30, 2021, Usher moved for compassionate release. See [D.E. 469]. The government opposes the motion. See [D.E. 483].

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine "that the defendant is not a danger to the safety of any other person or the community." Id. In deciding to reduce a

3

sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements issued by the" United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with "a serious deterioration in physical and mental health" due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states that

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

      (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

4

"an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not

---

>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (emphasis omitted).

updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), petition for cert. docketed, (U.S. Sept. 8, 2021) (No. 21-5624); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "U.S.S.G. § 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31 (cleaned up). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 283–84. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–09 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

### III.

Usher seeks compassionate release pursuant to section 3582(c)(1)(A). See [D.E. 469, 480]. However, "Usher is not actually requesting immediate release from prison" but instead seeks a sentence reduction. [D.E. 484] 5. Usher pursued administrative remedies before filing his motion. See [D.E. 480] 5; [D.E. 480-1]. The government concedes that Usher has exhausted his administrative remedies. See [D.E. 483] 4. Accordingly, the court considers Usher's motion on the merits.

6

In support, Usher cites the COVID-19 pandemic and his health conditions. See [D.E. 480] 12–22; [D.E. 469-1] 3–5. Usher also cites his rehabilitation while incarcerated, his supportive family, and his release plan. See [D.E. 480] 23–26. In addition, Usher argues that his stacked section 924(c) sentences are extraordinary and compelling reasons for a sentence reduction in light of the First Step Act eliminating stacked sentences under section 924(c). See id. at 6–12; [D.E. 469] 5–6, 8.

A.

Usher seeks a sentence reduction based on COVID-19 and his health conditions. The "medical condition of the defendant" policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Usher argues that his obesity and asthma make him more likely to contract COVID-19. See [D.E. 480] 16–19; [D.E. 469-1] 4–5. Other than being unable to exercise due to COVID-19 lockdowns, Usher has not alleged that he is unable to manage his health conditions while incarcerated or that the BOP is not giving him proper treatment. See [D.E. 480] 17. Moreover, Usher has been fully vaccinated against COVID-19 since April 2021, thereby reducing his risk of serious infection. See id. at 19; [D.E. 475] 13; cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."). Accordingly, reducing Usher's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic and Usher's health conditions are extraordinary and compelling reasons under

7

section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). At the same time, Usher being vaccinated dramatically reduces the weight of this assumption. Cf. Broadfield, 5 F.4th at 803. Moreover, as discussed below, the section 3553(a) factors counsel against reducing Usher's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

B.

Usher also moves for a sentence reduction because the First Step Act eliminated stacked sentences under section 924(c), which formed the bulk of Usher's total sentence. See [D.E. 480] 6–12, 27; [D.E. 469-1] 5–6. When the court sentenced Usher on December 5, 2012, section 924(c) imposed an 84-month mandatory minimum consecutive sentence for brandishing a firearm during a crime of violence and a 300-month mandatory minimum consecutive sentence for every subsequent conviction of the same offense. See McCoy, 981 F.3d at 275. A section 924(c) conviction was a subsequent conviction even if a defendant obtained the first section 924(c) conviction in the same case. See id. The jury convicted Usher of seven counts of brandishing a firearm during a crime of violence, triggering the 300-month mandatory minimum for six of those counts. See Usher, 555 F. App'x at 228.

In the First Step Act, Congress changed the law so that a section 924(c) conviction is only a subsequent conviction if the first section 924(c) conviction "arises from a separate case and already has become final." McCoy, 981 F.3d at 275 (quotation omitted). Thus, section 924(c) "no longer applies to multiple § 924(c) convictions obtained in a single prosecution." United States v. Jordan,

8

952 F.3d 160, 171 (4th Cir. 2020); see McCoy, 981 F.3d at 275. Section 403(b) of the First Step Act provides that this change to section 924(c) "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." § 403(b), 132 Stat. at 5222. This court, however, sentenced Usher in December 2012, long before Congress enacted the First Step Act.

Stacked sentences under section 924(c) may form the basis for a successful motion under section 3582(c)(1)(A). In McCoy, the Fourth Circuit affirmed two cases consolidated on appeal in which district courts granted motions for compassionate release based on stacked section 924(c) convictions. McCoy, 981 F.3d at 277–79. There, one defendant had served 17 years of his sentence and three defendants had each served approximately 25 years. See id. One defendant pleaded guilty to and three defendants were convicted by a jury of relevant robberies and related gun offenses. See id. The district courts granted compassionate release, reducing the defendants' sentences to time served because the courts determined that the defendants' sentences were greater than necessary to achieve the purposes of the relevant section 3553(a) factors. See id. Moreover, the district courts in those cases intimated that if the court had sentenced those defendants under today's section 924(c) regime, the defendants would likely have been close to completing or have already completed their sentences. See id.[2]

Here, Usher does not seek release from incarceration but rather seeks a sentence reduction. See [D.E. 484] 5. Usher has served approximately nine years of his sentence of approximately 176

---

[2] In McCoy, one defendant had served 17 years of a sentence of just over 35 years. See McCoy, 981 F.3d at 277. Had the defendant been sentenced today, the district court stated the sentence would have been more than 200 months (i.e., more than 16.5 years) shorter. See id. at 278. The other defendants had served approximately 25 years of their sentences of between 52 and 53 years. See id. at 278. Had they been sentenced today, the district court stated their sentences would have been 30 years shorter. See id. at 279.

9

years, significantly less than the defendants in McCoy. And in McCoy, the time defendants had already served was close to if not greater than the sentences the district court said that they would have received under today's section 924(c) standard. However, assuming without deciding that Usher's calculation is correct, Usher would have received at least a 49-year sentence under the current standard and would not be close to completing his sentence. See [D.E. 480] 8–9. Furthermore, although the district courts in McCoy expressed concern over the length of the sentences they imposed, the same is not true here. See McKoy, 981 F.3d at 278, 285. As mentioned, when this court originally sentenced Usher, the court expressly found that a life sentence was appropriate. In fact, the court concluded the sentencing hearing by stating it "would impose a life sentence as an alternative sentence because . . . there is a need to protect society from Mr. Usher." Sentencing Tr. at 16–17. Thus, even without the stacked section 924(c) mandatory minimum sentences, Usher would have effectively received the same sentence. And, as discussed below, the court has reexamined the section 3553(a) factors and reached the same conclusion as it did when the court first sentenced Usher.

C.

The section 3553(a) factors counsel against releasing Usher or otherwise reducing his sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; Chambliss, 948 F.3d at 693–94; Clark, 2020 WL 1874140, at *3–8. Usher is incarcerated for fifteen counts related to a string of armed robberies Usher committed with several co-conspirators. In 2009 and 2010, Usher and his co-conspirators robbed at gun point numerous stores in Goldsboro, Pikeville, and Wilson, North Carolina, stealing thousands of dollars. See PSR ¶¶ 4–40. In multiple robberies, Usher recruited co-conspirators into the scheme. See, e.g., id. ¶¶ 10, 26. To carry out the robberies, Usher and his co-conspirators wore bandanas or masks to conceal their identities and threatened store

10

employees with guns until the employees turned over the stores' money. See id. ¶¶ 4–31. During some robberies, Usher or a co-conspirator abducted employees by forcing them to other locations within the store. See id. ¶¶ 7, 12. During at least two robberies, Usher supplied the guns needed to carry out the offense. See id. ¶¶ 4, 15, 23. At sentencing, the court noted that Usher and his co-conspirators' crime spree was "chilling" and involved "serious repeated criminal behavior." Sentencing Tr. at 12–13. Despite Usher's role in the robberies and a jury convicting him beyond a reasonable doubt on all fifteen counts, Usher objected at sentencing that he was innocent. See id. at 7–8. He now, over a decade late, accepts responsibility for his horrific conduct. See [D.E. 469-1] 7–8.

Usher had a criminal record before committing the armed robberies, including felony possession with intent to sell or deliver marijuana. See id. ¶¶ 41–51. Furthermore, Usher has a history of probation revocations and violations, including multiple instances of absconding while on supervision. See id. ¶¶ 42, 45–47, 49. Usher also has incurred two nonviolent infractions while incarcerated federally, both of which Usher disputes. See [D.E. 483-1]; [D.E. 474].

In evaluating the section 3553(a) factors, Usher asks the court to consider "the sentence disparities that may exist between him and his co-defendants." [D.E. 469-1] 8. Usher's co-defendants received serious prison sentences, albeit shorter sentences than Usher. See PSR ¶ 3. Among Usher's co-defendants, the longest sentence was 216 months. See id. The disparity between Usher's sentence and those of his co-defendants is warranted. All of Usher's co-defendants accepted responsibility for their actions and pleaded guilty. See id. In so doing, they pleaded guilty to only two or three of the many offenses with which the government charged them. See id. Moreover, every co-defendant cooperated and testified against Usher at his trial. Compare id. with Trial Tr. [D.E. 345] 2–3 (listing who testified at trial). At the conclusion of Usher's trial, the jury convicted

11

Usher of all fifteen counts with which he was charged, and the court sentenced Usher accordingly. Furthermore, Usher was more culpable than his co-defendants. See, e.g., PSR ¶¶ 12, 23, 26, 30. As the PSR summarizes: "During the robberies in which Usher participated, Usher initiated the idea for the commission of the robberies, recruited and directed the activities of other conspirators, and supplied the firearms used in the robberies." Id. ¶ 4 (emphasis omitted). Based on Usher's culpability in the robberies and the section 3553(a) factors, the court determined any sentencing disparity between Usher and his co-defendants was warranted, and the court concluded it would impose a life sentence as an alternative variant sentence even absent the stacked section 924(c) sentences. See Sentencing Tr. at 16–17.

The court recognizes that Usher has taken some positive steps while federally incarcerated. Usher has completed education courses, completed a drug education program and worked to overcome his addictions, and has been an upstanding facility maintenance employee. See [D.E. 480] 24; [D.E. 480-2, 480-3, 480-4], [D.E. 480-6] 1. Usher also has made timely payments toward restitution. See [D.E. 480-3] 1–2. Usher has received commendations for his contributions to various programs and was a nominee for the 2015 NAACP award in the category of religious faith. See [D.E. 480-4] 4, 7; [D.E. 480-5]. The court also has considered the letters Usher's mother and the Challenge Program coordinator wrote attesting to Usher's positive improvements while incarcerated. See [D.E. 480-6] 2–4; [D.E. 480-7].

The court must balance Usher's positive steps toward rehabilitation with the extraordinary seriousness of Usher's criminal conduct and criminal record. The court also has considered Usher's potential exposure to COVID-19, medical conditions, job skills, and release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019).

12

Having considered the entire record, the steps that the BOP has taken to address COVID-19 and treat Usher, changes to the law in section 924(c), the section 3553(a) factors, Usher's arguments, the government's persuasive response, and the need to punish Usher for his horrific criminal behavior, to incapacitate Usher, to promote respect for the law, to deter others, and to protect society, the court denies Usher's motion for compassionate release or a sentence reduction. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

IV.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 469].

SO ORDERED. This 11 day of October, 2021.

JAMES C. DEVER III
United States District Judge