| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DOMONIC DEVARRISE USHER, | ) | |
| | ) | |
| Defendant. | ) | |

On August 19, 2024, Domonic Devarrise Usher ("Usher" or "defendant"), proceeding pro se, moved (again) for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2019) (codified as amended at 18 U.S.C. § 3582) [D.E. 521]. Cf. [D.E. 497, 504, 505]. On October 23, 2025, Usher filed an amended motion for compassionate release [D.E. 522]. On December 15, 2025, the United States responded in opposition to Usher's motions [D.E. 526]. On February 9, 2026, Usher replied [D.E. 527-1] and filed a copy of a "Request to Amend" his motion for compassionate release dated January 12, 2025 [D.E. 527]. As explained below, the court denies Usher's motions for compassionate release.

I.

In 2009 and 2010, Usher and his crew committed a series of horrific armed robberies in eastern North Carolina. See Presentence Investigation Report ("PSR") [D.E. 331] ¶¶ 4–40. On July 19, 2012, a jury convicted Usher of one count of conspiracy to commit violations of the Hobbs Act (interference with commerce by robbery), seven counts of interference with commerce by robbery, and seven counts of carrying and using a firearm during and in relation to a crime of violence. See United States v. Usher, 555 F. App'x 227, 228 (4th Cir. 2014) (per curiam) (unpublished); [D.E. 271]. On December 5, 2012, the court held Usher's sentencing hearing and

adopted the facts set forth in the PSR. See PSR; Sentencing Tr. [D.E. 349] 5; Fed. R. Crim. P. 32(i)(A)–(B). The court calculated Usher's total offense level to be 33, his criminal history category to be IV, and his advisory guideline range to be 188 to 235 months' imprisonment, to be followed by a minimum 84-month consecutive sentence for the first firearm count and a minimum 300-month consecutive sentence for each subsequent firearm count. See Sentencing Tr. at 6; PSR ¶¶ 140–45. At sentencing, Usher falsely proclaimed his innocence. See Sentencing Tr. at 8. After thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Usher to (1) 235 months' imprisonment on counts one, two, four, six, eight, ten, and fourteen to run concurrently, (2) 84 months' consecutive imprisonment on count three, and (3) 300 months' consecutive imprisonment each on counts five, seven, nine, eleven, thirteen, and fifteen, for a total of 2,119 months' imprisonment. See [D.E. 337] 1–3; Sentencing Tr. at 11–18.

While imposing the sentence, the court noted how Usher and the robbery crew (who testified against Usher) terrorized the store clerks and customers. See Sentencing Tr. at 12–13; see also Trial Tr. [D.E. 345] 47–48, 57–59, 163–65, 198–99; PSR ¶ 3. The court also noted Usher's serious criminal history, repeated receipt of judicial leniency, and the need to protect society from Usher. See Sentencing Tr. at 13–14. As an alternative variant sentence, the court noted that even if the stacking provisions in section 924(c) did not effectively mandate a life sentence, then the court would impose a life sentence based on the section 3553(a) factors. See id. at 16–17. The United States Court of Appeals for the Fourth Circuit affirmed Usher's conviction and sentence on all counts. See Usher, 555 F. App'x at 228–29.

In 2015, Usher moved pro se for relief under 28 U.S.C. § 2255 and alleged ineffective assistance of appellate counsel for failing to challenge his 84-month sentence on count three in

light of <u>Alleyne v. United States</u>, 570 U.S. 99 (2013), and for failing to challenge his "second and subsequent" section 924(c) convictions under <u>Alleyne</u>. <u>See</u> [D.E. 358]; [D.E. 363] 4–12. On June 7, 2016, Usher, through counsel, supplemented his section 2255 motion to challenge his section 924(c) convictions in counts three, five, seven, nine, eleven, thirteen, and fifteen under <u>Johnson v. United States</u>, 576 U.S. 591 (2015), arguing that Hobbs Act robbery is not a crime of violence. <u>See</u> [D.E. 375]. After holding the motion in abeyance awaiting the resolution of two Fourth Circuit cases, the court dismissed Usher's section 2255 motion and denied a certificate of appealability. <u>See</u> [D.E. 400]. Usher appealed the court's dismissal, and the Fourth Circuit denied a certificate of appealability. <u>See</u> <u>United States v. Usher</u>, 808 F. App'x 202 (4th Cir. 2020) (per curiam) (unpublished).

On March 30, 2021, Usher moved for compassionate release. <u>See</u> [D.E. 469]. On October 11, 2021, the court entered a comprehensive order and denied Usher's motion for compassionate release. <u>See</u> [D.E. 497]. Usher appealed. <u>See</u> [D.E. 498]. On May 24, 2022, the Fourth Circuit affirmed. <u>See</u> <u>United States v. Usher</u>, No. 21-7724, 2022 WL 1684504, at *1 (4th Cir. May 26, 2022) (per curiam) (unpublished).

II.

A court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); <u>see</u> <u>United States v. Bethea</u>, 54 F.4th 826, 831 (4th Cir. 2022); <u>United States v. Hargrove</u>, 30 F.4th 189, 194 (4th Cir. 2022); <u>United States v. High</u>, 997 F.3d 181, 185–86 (4th Cir. 2021); <u>United States v. Kibble</u>, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam); <u>United States</u>

Case 5:11-cr-00217-D    Document 528    Filed 05/29/26    Page 3 of 12

v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020), abrogated on other grounds by Rutherford v. United States, __ U.S. __, 2026 WL 1485535 (2026). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see United States v. Ferguson, 55 F.4th 262, 268 (4th Cir. 2022). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See United States v. Washington, 161 F.4th 816, 818 (4th Cir. 2025); Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. A circumstance is extraordinary when it is "most unusual, far from common, or having little or no precedent." Rutherford, 2026 WL 1485535, at *7 (citation and quotations omitted). "Compelling . . . means tending to convince or convert by or as if by forcefulness of evidence." Id. (citation and quotations omitted). Thus, "extraordinary and compelling reasons for compassionate release are those that are especially unusual and convincing." Id. (quotations omitted); see also Fernandez v. United States, __ U.S. __, 2026 WL 1485476, at *10 (2026). "That is a demanding standard." Fernandez, 2026 WL 1485476, at *7. Moreover, although a court considers a defendant's post-

4

sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d); United States v. Davis, 99 F.4th 647, 659 (4th Cir. 2024), abrogated on other grounds by Rutherford, 2026 WL 1485535; McCoy, 981 F.3d at 286 n.9.

The Sentencing Commission policy statement in U.S.S.G. § 1B1.13 applies to a defendant's compassionate release motion. See U.S.S.G. § 1B1.13(a). Section 1B1.13(b) lists several extraordinary and compelling reasons, including (1) a defendant's medical circumstances; (2) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her imprisonment term; (3) a defendant's family circumstances; (4) a defendant who suffered sexual abuse, or physical abuse with serious bodily injury, at the hands of those with custody over the defendant while serving the term of imprisonment sought to be reduced; (5) any other reasons similar in gravity to those described in paragraphs (1) through (4) of the policy statement; or (6) a qualifying change in the law that produces a gross disparity between the defendant's unusually long sentence being served and the sentence likely to be imposed at the time the motion is filed, after fully considering the defendant's individual circumstances. See U.S.S.G. § 1B1.13(b), invalidated in part by Rutherford, 2026 WL 1485535, at *10. A defendant's rehabilitation alone is not an extraordinary or compelling reason, but it "may be considered in combination with other circumstances in determining whether and to what extent a reduction . . . is warranted." U.S.S.G. § 1B1.13(d). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. Id. § 1B1.13(e).

## III.

Usher seeks compassionate release under section 3582(c)(1)(A). See [D.E. 521] 2; [D.E. 522] 1. Usher asks the court to reduce his sentence to 240 months' imprisonment or time served. See [D.E. 521] 4; [D.E. 522] 30–31. On July 1, 2024, Usher requested that the warden of FCI Williamsburg file a compassionate release motion on Usher's behalf. See [D.E. 521-8] 3, 5. On July 17, 2024, the warden denied Usher's request. See id. at 4. Usher filed the first of his pending compassionate release motions on August 19, 2024. See [D.E. 521]. Usher has exhausted his administrative remedies. Thus, the court considers Usher's motions on the merits.

## A.

In support of his motions, Usher argues that his stacked 924(c) sentences are extraordinary and compelling reasons in light of the First Step Act prospectively eliminating stacked sentences under section 924(c). See id. at 3–10, 12–20; [D.E. 522] 14–15; [D.E. 527-1] 5–9. Usher also argues that his various medical conditions constitute extraordinary and compelling reasons for reducing his sentence and cites his rehabilitation, the nature of incarceration during COVID-19, and the 3553(a) factors. See [D.E. 522] 15–29; [D.E. 527-1] 1–5, 9–11.

The "unusually long sentence" policy statement instructs that if a defendant received an unusually long sentence and has served a term of at least 10 years' imprisonment, a change in the law may be considered as an extraordinary and compelling reason only "after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6), invalidated in part by Rutherford, 2026 WL 1485535, at *10. A sentence is unusually long with reference to the "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." Id. Usher has served over 10 years' imprisonment.

Case 5:11-cr-00217-D        Document 528        Filed 05/29/26        Page 6 of 12

Before the Supreme Court's decision in <u>Rutherford v. United States</u>, __ U.S. __, 2026 WL 1485535 (2026), the Fourth Circuit held that under U.S.S.G. § 1B1.13(b)(6), "the length of, and disparity between, pre- and post-First Step Act [section] 924(c) sentences can constitute extraordinary and compelling reasons for compassionate release." <u>United States v. Burleigh</u>, 145 F.4th 541, 546 (4th Cir. 2025), <u>abrogated by Rutherford</u>, 2026 WL 1485535; <u>see</u> <u>Davis</u>, 99 F.4th at 657–58; <u>McCoy</u>, 981 F.3d at 285–88. The Court in <u>Rutherford</u> abrogated this line of cases and held that "Congress's nonretroactive change to [section] 924(c)—considered by itself or in combination with other factors—cannot make a prisoner eligible for compassionate release." 2026 WL 1485535, at *10; <u>see also id</u> at *5 n.2. The Court in <u>Rutherford</u> also invalidated section 1B1.13(b)(6) "to the extent" it permits nonretroactive changes to sentencing law to be considered extraordinary and compelling reasons for compassionate release. <u>Id.</u> at *10. Thus, Usher's stacked 924(c) sentences are not extraordinary and compelling reasons for compassionate release. <u>See id.</u> at *6–11.

The "medical circumstances of the defendant" policy statement provides, in relevant part, that a defendant's medical conditions may constitute extraordinary and compelling reasons if: (1) the defendant is suffering from a terminal illness; (2) the defendant suffers from a condition that "substantially diminishes" the defendant's ability to "provide self-care within the environment of a correctional facility and from which he or she is not expected to recover[;]" or (3) the defendant's medical condition "requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(A)–(C). Usher does not allege that he suffers from a terminal illness. <u>See id.</u> § 1B1.13(b)(1)(A). Usher cites "various health conditions that have been affecting him and make living in the prison environment exceptionally difficult" including "issues concerning his

breathing/Asthma, an enlarged prostate with lower urinary tract symptoms, and high blood pressure." [D.E. 521] 20.

Usher fails to demonstrate that these medical conditions substantially diminish his ability to provide self-care while incarcerated. See, e.g., United States v. Best, No. 5:19-CR-293, 2025 WL 2585586, at *3 (E.D.N.C. Sept. 5, 2025) (unpublished) (collecting cases). Usher also fails to demonstrate that his medical conditions require long term or specialized medical care unprovided by his correctional facility. Usher's medical records demonstrate that he has received prompt care for his medical conditions. See [D.E. 521-5]. Thus, Usher's medical circumstances do not constitute extraordinary and compelling reasons.

As for the "other reasons" policy statement, Usher cites the "harsh and severe" nature of incarceration during the COVID-19 pandemic and his rehabilitation. See [D.E. 521] 10–11; [D.E. 522] 5–6. As for rehabilitation, Usher's rehabilitation alone is not an extraordinary and compelling reason. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d); Davis, 99 F.4th at 659; McCoy, 981 F.3d at 286 n.9. As for the nature of incarceration during the COVID-19 pandemic, "if challenging the conditions of confinement caused by the pandemic warranted a sentence reduction here, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction." United States v. Laporte, No. 4:19-CR-8, 2024 WL 4800192, at *4 (E.D. Va. Nov. 15, 2024) (unpublished) (cleaned up), aff'd, No. 24-7154, 2025 WL 602774 (4th Cir. Feb. 25, 2025) (per curiam) (unpublished), cert. denied, 146 S. Ct. 210 (2025); see United States v. Estrada, No. 1:06-CR-161, 2025 WL 2855123, at *3 (M.D.N.C. Oct. 8, 2025) (unpublished); Taylor v. United States, No. 4:19-CR-87, 2023 WL 1475072, at *3 (E.D. Va. Feb. 2, 2023) (unpublished). A circumstance which applies to every federal prisoner incarcerated during the

8

pandemic is not an extraordinary and compelling reason for compassionate release. See, e.g., Rutherford, 2026 WL 1485535, at *7.

Alternatively, the court assumes without deciding that Usher's rehabilitation, medical circumstances, and incarceration during COVID-19 together are extraordinary and compelling reasons under section 1B1.13(b)(5). Nonetheless, the section 3553(a) factors counsel against granting Usher's motions.

B.

The section 3553(a) factors weigh against releasing Usher or otherwise reducing his sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32. Usher is incarcerated for 15 counts related to a string of armed robberies Usher committed with several co-conspirators. In 2009 and 2010, Usher and his co-conspirators robbed at gun point numerous stores in Goldsboro, Pikeville, and Wilson, North Carolina, stealing thousands of dollars. See PSR ¶¶ 4–40. In multiple robberies, Usher and his co-conspirators concealed their identities with masks or bandanas and threatened store employees with guns until the employees turned over the stores' money. See id. ¶¶ 4–31. During some robberies, Usher or a co-conspirator abducted employees by forcing them to other locations within the store. See id. ¶¶ 7, 12. During at least two robberies, Usher supplied the guns needed to carry out the offense. See id. ¶¶ 4, 15, 23. At sentencing, the court noted that Usher and his co-conspirators' crime spree was "chilling" and involved "serious repeated criminal behavior." Sentencing Tr. at 12–13. Despite Usher's role in the robberies and a jury convicting him beyond a reasonable doubt on all fifteen counts, Usher falsely claimed at sentencing that he was innocent. See id. at 7–8. Now, over a decade and a half

9

late, Usher admits his guilt and accepts responsibility for his horrific conduct. See [D.E. 521] 3; [D.E. 522] 6–7.

Usher had a serious criminal record before committing the armed robberies, including felony possession with intent to sell or deliver marijuana. See PSR ¶¶ 41–51. Furthermore, Usher has a history of probation revocations and violations, including multiple instances of absconding while on supervision. See id. ¶¶ 42, 45–47, 49.

In evaluating the section 3553(a) factors, Usher asks the court to consider that his armed robbery spree did not physically injure anyone, that his criminal history is minor besides the armed robbery spree, and that the First Step Act changed section 924(c)'s sentencing regime. See [D.E. 522] 5–21. Usher also cites his rehabilitation, the sentencing disparity between he and his co-defendants, and his medical conditions. See id. at 21–29; [D.E. 521] 21–22.

As for Usher's argument that no one was physically injured during the armed robbery spree, the court considered this argument when it first sentenced Usher and concluded that his sentence was justified. See Sentencing Tr. at 12–13. As for Usher's criminal history, the court rejects Usher's characterization of his criminal history before his armed robbery spree was "relatively minor." [D.E. 522] 10. As the court explained when it sentenced Usher, Usher's criminal history was "not anything to be proud of" and demonstrated "multiple opportunities on probation for various offenses and probation was consistently revoked." Sentencing Tr. at 13. As for Usher's First Step Act argument, the court continues to believe that a life sentence is a sentence sufficient but not greater than necessary to serve the purposes of the section 3553(a) factors. See Sentencing Tr. at 16–17; Usher, 572 F. Supp. 3d at 169–171.

The court also rejects Usher's argument about sentencing disparities between Usher and his co-defendants. As the court explained when it denied Usher's first compassionate release

**10**

motion, unlike Usher, Usher's co-defendants accepted responsibility for their actions, pleaded guilty to two or three of the many counts with which they were charged, and cooperated and testified against Usher at his trial. See Usher, 572 F. Supp. 3d at 170. Moreover, Usher's co-defendants received serious prison sentences, albeit shorter sentences than Usher. See PSR ¶ 3. Among Usher's co-defendants, the longest sentence was 216 months. See id. Furthermore, Usher was more culpable than his co-defendants. See Usher, 572 F. Supp. 3d at 170. Based on Usher's culpability in the robberies and the section 3553(a) factors, the court determined any sentencing disparity between Usher and his co-defendants was warranted, and the court concluded that it would impose a life sentence as an alternative variant sentence even absent the stacked section 924(c) sentences. See id.

The court recognizes that Usher has taken some positive steps while federally incarcerated. Usher has completed education courses, completed a drug education program and worked to overcome his addiction, and has been a facility maintenance and recreation department employee. See [D.E. 521-2] 1–6; [D.E. 522-3] 2–6, 8–10. Usher also has made timely payments toward restitution. See [D.E. 521-1] 3. Usher has received commendation for his contributions to various programs and was a nominee for the 2015 NAACP award in the category of religious faith. See [D.E. 521-2] 7–8; [D.E. 521-3] 7; [D.E. 522-3] 7, 9. The court also has considered the letters from Usher's wife, Usher's mother, the Challenge program coordinator, Usher's maintenance work supervisor, and a fellow inmate attesting to Usher's positive improvements while incarcerated. See [D.E. 521-3] 1–7; [D.E. 521-7] 1–4; [D.E. 522-2] 2; [D.E. 522-5] 2–6.

The court must balance Usher's steps toward rehabilitation with his appalling criminal conduct and his serious criminal history. Having considered the entire record, the section 3553(a) factors, the steps that the BOP has taken to treat Usher, Usher's arguments in both motions and his

11

other papers, the government's persuasive response, and the need to punish Usher for his appalling criminal behavior, to incapacitate Usher, to promote respect for the law, to deter others, and to protect society, the court denies Usher's motions for compassionate release. See, e.g., Concepcion v. United States, 597 U.S. 481, 498–501 (2022); Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 480–81; Washington, 161 F.4th at 820–24; United States v. Smith, 75 F.4th 459, 464–66 (4th Cir. 2023); United States v. Troy, 64 F.4th 177, 185 (4th Cir. 2023); United States v. Reed, 58 F.4th 816, 821–24 (4th Cir. 2023); United States v. Roane, 51 F.4th 541, 551–52 (4th Cir. 2022); Hargrove, 30 F.4th at 198–200; Kibble, 992 F.3d at 331–32; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

IV.

In sum, the court DENIES defendant's motions for compassionate release [D.E. 521, 522, 527].

SO ORDERED. This 19 day of May, 2026.

JAMES C. DEVER III<br>
United States District Judge

12